UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KENNETH WILEY                                                    CIVIL ACTION

VERSUS                                                           NO. 06-3512

GOV. K. BLANCO ET AL.                                            SECTION "A" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Kenneth Wiley, is a prisoner currently incarcerated in the Orleans Parish Prison ("OPP") system in New Orleans, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Louisiana Governor K. Blanco, New Orleans Mayor Ray Nagin, Orleans Parish Criminal Sheriff Marlin N. Gusman, the State of Louisiana and the "Orleans Criminal Office."  He alleges that, while he was incarcerated in the OPP in December 2005, he was improperly housed with a murder suspect, he was sexually assaulted by the murder suspect, he was subjected to unsanitary conditions of confinement and he was provided with inadequate medical care.  He seeks $500,000,000,000 in damages.  Record Doc. No. 1 (Complaint at ¶ V).

On November 13, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, Phyllis Glazer and Franz Zibilich, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff testified that he is currently incarcerated on burglary and possession of cocaine charges, for which he was arrested on November 18, 2005.  He said he has not yet been convicted of those charges and he was scheduled to return to court on his criminal charges on January 4, 2007.  Wiley confirmed that all of the claims he makes in this case are related to a period of time during which he was incarcerated in the House of Detention ("HOD") in the OPP, from the date of his arrest until about two months before the telephone conference.

As to his claim that he was sexually assaulted while in HOD, plaintiff could not remember the date but said the assault occurred in either November or December 2005. Asked who committed the assault, he said, "I don't know.  The dude had something on his face."  Wiley testified that his assailant was a prisoner who had "something covering his face," perhaps a piece of clothing.  Wiley said he did not know his assailant's name and knew nothing about him.  Asked to describe him, Wiley said, "I don't know which one he was."  He could provide no information about the attacker's appearance, except to say that there were ten prisoners in his cell and the assault was committed by one of them.  He did not know the names of any of the other prisoners in the cell.

Wiley testified that he was housed on the fifth floor of HOD, on either the south or the north side, at the time of the attack.  He said he was not familiar at all with the

2

prisoner who committed the assault.  He said that his assailant had touched him several times before the attack and that he had reported the touching to prison officials.

Plaintiff confirmed that he had attached to his complaint in this court copies of some of the grievance forms he had submitted to prison officials, including one form concerning the touching that was dated April 13, 2006, about six months <u>after</u> the assault incident.  He testified that, about a week or two after the sexual assault, he had orally asked an OPP deputy to move him to another cell, but he could not remember the name of the deputy.

He testified that the person who committed the sexual assault was being held in OPP on a murder charge but had not yet been convicted.  He stated that all of the other inmates who were being held with him in the HOD cell were pretrial detainees.

Asked what fault prison officials had committed that led to the sexual assault, Wiley testified that "it never would have happened" if he had not been housed with other inmates who were facing more serious charges.  Asked whether prison officials had any reason to believe, before the assault, that Wiley would be sexually assaulted, he said, "No."  He testified that prison officials should "put together" inmates who face more serious charges, while inmates who face less serious offenses should be separated from those facing more serious charges.  He also said that prison officials "could have somewhere where deputies could look in on you and see what's going on in the tier."  He

3

said that no deputies were walking up and down the hall outside the cell where he was assaulted, except during roll call.  Wiley testified that no one else, including the other prisoners in the cell, saw the assault, which occurred about 2:30 a.m.

Asked if he had ever sent a grievance to anyone at the jail concerning the sexual assault, plaintiff said, "No, I don't think I did."

As to his claim concerning conditions in HOD, Wiley confirmed that they included a lack of hot showers, poor meals, overcrowding, gnats in the cell and lack of shower slippers.  He complained that the guards would slide food to the inmates under the cell door on the dirty floor, rather than placing it in their hands, and that the tap water was always cold.  He said there were broken windows in the hallway and there was no heat during the winter.  He confirmed that he experienced those conditions for about six months while he was in HOD, before he was transferred to the Templeman facility in OPP.

Asked if he suffered any injuries or illness as a result of his exposure to conditions in HOD, plaintiff said, "I kept colds all the time and had to go to the doctor to get cold medicine."

Wiley testified that his claim of improper medical care in this case concerns the failure of OPP doctors to prescribe any medication for his sleeping disorder.  He said the doctors told him that they do not treat sleeping disorders and that "I would just have to

4

sleep the best way I know how."  He stated that he had not yet received the medical records I had previously ordered, which Sheriff Gusman has provided to the court. Record Doc. Nos. 7, 16.  However, Wiley confirmed the notations in his medical records that OPP officials are having him seen by a psychiatrist and are giving him medications for his mental disorders.  He stated that he has seen a psychiatrist at OPP about six times, he is receiving medication for his mental problems and he was treated for colds.

On cross-examination, Wiley testified that he had sued the Mayor of the City of New Orleans in this case because he believes the Mayor needs to investigate the way that OPP is being run. He alleged that both the Mayor and the Governor of Louisiana have some responsibility for the way OPP is run.

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Haddix v. Kerss, No. 04-41636, 2006 WL 2861110, at *2 (5th Cir. Oct. 9, 2006); Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The

Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section

1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

II.    PRISONER CLASSIFICATION

Wiley testified that he was attacked by a murder suspect who was in the same cell with him.  His claim is that prison officials should have housed pretrial detainees with more serious charges, such as murder, separately from pretrial detainees with less serious charges, such as his own charges of burglary and possession of cocaine.

In Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981),[2] the en banc Fifth Circuit stated that

---

[1]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

[2]Overruled on other grounds by International Woodworkers v. Champion Int'l Corp., 790 F.2d 1174 (5th Cir. 1986), aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).

8

> [t]he confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional unless such a practice is 'reasonably related to the institution's interest in maintaining jail security,' or physical facilities do not permit their separation.  Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted . . . .  Nonetheless, pretrial detainees have a due process right to be considered individually to the extent security and space requirements permit."

Id. at 1374 (quoting Bell v. Wolfish, 441 U.S. 520, 531 (1979)) (additional citations omitted).  Thus, the Fifth Circuit in Jones recognized that the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification.  Pembroke v. Wood County, 981 F.2d 225, 228 (5th Cir. 1993).  However, the court also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates.  My research has located no case in which the Fifth Circuit has ever ruled that housing pretrial detainees together, regardless of the charges against them, in the absence of any knowledge by prison officials of a specific detainee's violent tendencies, raises any constitutional concerns.

Significantly, the classification of inmates is an administrative function of the prison.  Jones, 636 F.2d at 1376.  Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742

(5th Cir. 1990).  "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates."  Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472).  "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law."  Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification.  The classification of prisoners is a matter within the discretion of prison officials.  Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials."  Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

The Fifth Circuit's panel decision in Jones v. Diamond stated that, "[n]ot having been convicted, pretrial detainees are all on the same footing and, in the absence of some special circumstance, are entitled to no different treatment than that accorded to others in the same class."  Jones v. Diamond, 594 F.2d. 997, 1016 (5th Cir. 1979), aff'd in part

& rev'd in part, 636 F.2d at 1364.[3]  At least two district courts have held that a pretrial detainee who faces felony charges, who is housed with other felony suspects and who is attacked without warning by another pretrial detainee, fails to state a constitutional claim. See Yarbough v. Elrod, No. 83 C 5348, 1988 WL 58586, at *1 (N.D. Ill. May 31, 1988) (Parsons, J.) (citing Jones, 594 F.2d. at 1016); Armon v. Jones, 580 F. Supp. 917, 925-26 (N.D. Tex. 1983) (Porter, J.) (citing Jones, 594 F.2d. at 1016).

Under the precise circumstances of this case, it cannot be concluded that housing Wiley, a pretrial detainee, with another pretrial detainee who had been charged with murder was unconstitutional.  Wiley's testimony establishes that both he and the other inmate were being held on felony charges.[4]  See Armon, 580 F. Supp. at 919, 924 (housing felony suspects together, including plaintiff who was attacked by other pretrial detainees, was reasonable because it limited the potential for harm to presumptively less dangerous inmates).  Wiley stated that he had not submitted any written grievance forms concerning the other inmate touching him inappropriately before the assault and that he

---

[3]After rehearing was granted, the en banc Fifth Circuit did not address this statement by the three-judge panel.  The en banc court decided only whether the housing of pretrial detainees with convicted inmates was unconstitutional, Jones, 636 F.2d at 1374, and did not address the housing rights of pretrial detainees vis-à-vis each other.

[4]The Louisiana Criminal Code defines "felony" as "any crime for which an offender may be sentenced to death or imprisonment at hard labor."  La. Rev. Stat. § 14:2.  All forms of burglary (simple burglary, aggravated burglary, simple burglary of a pharmacy and simple burglary of an inhabited dwelling) carry potential punishments of imprisonment at hard labor.  Id. §§ 41:60, 62, 62.1, 62.2.  Possession of cocaine is also punishable by imprisonment at hard labor.  Id. § 40:967(C)(2).

did not orally request to be moved from the tier until a week or two <u>after</u> the assault.  The only written grievance submitted by Wiley complaining about any "touching" by the other inmate is dated several months <u>after</u> the alleged assault.  Wiley testified that prison officials had no reason to suspect, before the assault, that the inmate who attacked him posed any known or anticipated threat to him.

In this instance, housing Wiley together with other pretrial detainees, including one charged with murder, cannot be characterized as arbitrary or indiscriminate.  It was a reasonable administrative decision and was not an abuse of the discretion the law assigns to prison officials, with which this court should not interfere.  No violation of Wiley's constitutional rights occurred under these circumstances.

III.   <u>FAILURE TO PROTECT</u>

As previously noted, Wiley was a pretrial detainee at the time of the incident on which he bases this claim.  In <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), however, the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement."  <u>Id.</u> at 650. Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such

12

as those alleged by Wiley in this case.  Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir.

1996); Hare, 74 F.3d at 650.  Here, although plaintiff alleges that he was exposed to harm

by prison officials' acts or omissions, he fails to state a claim cognizable under Section

1983.

Under the Eighth Amendment, prison officials have a duty to protect inmates from

violence by other inmates and to take reasonable measures to protect their safety.  Farmer

v. Brennan, 511 U.S. 825, 832-33 (1994); Hare, 74 F.3d at 650.  The Eighth Amendment

standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to

protect him from harm inflicted by other inmates.  Thus, prison officials can be held

liable for their failure to protect an inmate only when they are deliberately indifferent to

a substantial risk of serious harm.  Farmer, 511 U.S. at 834; Newton v. Black, 133 F.3d

301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts

repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth

Amendment.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia,

428 U.S. 153, 182-83 (1976).  "Deliberate indifference" means that a prison official is

liable "only if he knows that the inmates face a substantial risk of serious harm and

disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S.

at 847.

13

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837; accord Newton, 133 F.3d at 308.  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (additional citations and footnote omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.

In this case, it cannot be concluded that prison officials unconstitutionally exposed plaintiff to a substantial risk of serious harm because his own testimony confirms that prison officials had no reason to believe or even suspect that the unknown inmate who allegedly attacked him posed any danger to Wiley.  There was no history known to defendants of prior incidents between Wiley and the other inmate.  The incident occurred suddenly and without warning.  As Wiley testified, prison officials had no reason to suspect that the inmate who attacked him posed any known or anticipated threat to him before the assault.  Wiley said that he had not submitted any written grievance forms concerning the other inmate touching him inappropriately before the assault and that he did not orally request to be moved from the tier until a week or two after the assault.

Under these circumstances, it cannot be concluded that any act or omission of prison officials knowingly exposed Wiley to a substantial risk of serious harm.  Any conceivable claim that prison officials violated his constitutional rights by failing to protect him from harm must be dismissed.

IV.   <u>FAILURE TO EXHAUST ARP</u>

Even if Wiley stated a claim that prison officials unconstitutionally failed to protect him from being attacked by another inmate, that claim must be dismissed because Wiley failed to exhaust the administrative remedy procedure ("ARP") available at OPP.

In the Prison Litigation Reform Act of 1996 ("PLRA"), Congress revised the exhaustion provision to <u>require</u> that a prisoner <u>complete</u> an available prison ARP before filing a Section 1983 suit and to eliminate the district court's discretion to permit a suit to proceed without exhaustion.  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002) (citing the Civil Rights of Institutionalized Persons Act, 94 Stat. 352, as amended, 42 U.S.C. § 1997(e)).  In short, 42 U.S.C. § 1997(e)(a) now <u>mandates</u> exhaustion of administrative remedies, stating that "<u>no</u> action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>."  42 U.S.C. § 1997(e)(a) (emphasis added).

In <u>Clifford v. Gibbs</u>, 298 F.3d 328, 329 (5th Cir. 2002), the Fifth Circuit reiterated the Supreme Court's finding that the "exhaustion requirement applies to <u>all</u> inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  <u>Id.</u> (citing <u>Porter</u>, 534 U.S. at 992) (emphasis added).

16

Wiley did not exhaust the available ARP at OPP as to his failure to protect claim. To do this, Wiley is required by law to complete the three-step administrative grievance procedure in place at OPP.  Wiley filed a grievance with the Sheriff's office on April 13, 2006 regarding being touched by the other inmate, which was six months after the assault occurred.  He received the step one written response with directions to complete step two. Wiley does not provide any evidence that he ever completed step two, nor does he provide any evidence that he filed any grievance involving the separate, alleged sexual assault.  It is clear from the language of the statute, from the Supreme Court's decision in <u>Porter</u> and from the Fifth Circuit's recent decision in <u>Clifford</u> that exhaustion of an available prison ARP is a requirement before filing suit.

Accordingly, plaintiff's claim of failure to protect would have to be dismissed without prejudice to refiling after exhausting his administrative remedies, if the claim was not dismissed with prejudice for the reasons stated in the preceding section.

V.      <u>CONDITIONS OF CONFINEMENT</u>

Wiley testified that he was subjected to unconstitutionally unsanitary conditions of confinement.  He complained of inadequate quantity and service of meals.  He also complained of overcrowding in the cells and lack of hot showers.

Wiley was a pretrial detainee for the time period about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the

17

standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999); Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996).

Here, there is nothing in plaintiff's written submissions or Spears testimony from which it might be inferred that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  On the contrary, in this case "'the complained-of harm [in each instance] is a particular act or omission of one or more officials,'" Olabisiomotosho, 185 F.3d at 526 (quoting Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)), and the deliberate indifference standard enunciated in Estelle, 429 U.S. at 104, and explained in detail above, applies.

Wiley's allegations do not constitute violations of the Constitution.  As discussed above in connection with his failure to protect claim, two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described. First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is

18

incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 847.  Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety.  <u>Id.</u>  A prison official cannot be held liable "unless the official <u>knows of and disregards an excessive risk to inmate health or safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>."  <u>Id.</u> at 837 (emphasis added).  Again, "'subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

Thus, Wiley must allege facts sufficient to establish that any defendant <u>knew</u> he faced a <u>substantial risk</u> of <u>serious</u> harm and <u>disregarded that risk</u> by failing to take reasonable measures to abate it.  Plaintiff fails to allege any such facts.  Although the conditions he described may be unpleasant, Wiley has failed to allege either deprivations so extreme that they violate the United States Constitution or deliberately indifferent conduct by jail officials severe enough to meet the requirements of applicable constitutional law, and this claim does not rise to the level of constitutional violation.

A.   <u>Food</u>

Wiley claims that the food served at OPP was handled in unsanitary ways and the portion size was inadequate.  The Eighth and Fourteenth Amendments set limits on the kind of treatment and conditions a State may impose on prisoners.  States violate the Eighth Amendment if they fail to provide prisoners with reasonably adequate food, clothing, shelter and sanitation.  <u>Newman v. Alabama</u>, 559 F.2d 283, 286 (5th Cir. 1977), <u>rev'd in part on other grounds sub nom</u> <u>Alabama v. Pugh</u>, 438 U.S. 781, 915 (1978); <u>George v. King</u>, 837 F.2d 705, 707 (5th Cir. 1988); <u>Gates v. Collier</u>, 501 F.2d 1291 (5th Cir. 1974).

However, the storage and handling of food is a discretionary, administrative function of prison officials.  <u>Holloway v. Gunnell</u>, 685 F.2d 150, 155 (5th Cir. 1982). Courts must accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  <u>Bell</u>, 441 U.S. at 547-48; <u>Smith v. Bingham</u>, 914 F.2d 740, 742 (5th Cir. 1990).  Thus, "in the absence of allegations that the food supplies became contaminated because of the prison officials' neglect, the storage of the food is a matter for the prison officials" to decide and administer.  <u>Holloway</u>, 685 F.2d at 155.

In this case, plaintiff alleges that the guards would slide the food underneath the cell door on the dirty floor, rather than placing it in the inmates' hands.  He also

complains that gnats sometimes buzzed around the food. These allegations, while describing unfortunate conditions, do not state a violation of plaintiff's constitutional rights. Wiley reports no illness or injury from having eaten this food. The gnats in the air about which Wiley complains created only a level of discomfort, not an excessive risk of harm. See Chavis v. Fairman, No. 92 C 7490, 1994 WL 55719, at *3 (N.D. Ill. Feb. 22, 1994), aff'd, 51 F.3d 275 (7th Cir. 1995) ("While providing inmates with vermin infested food clearly rises to the level of a constitutional infraction, a mere allegation that bugs flew around the food, without more, does not sufficiently allege that the jail served nutritionally inadequate food that threatened the health of those who consumed it.").

Plaintiff also complains that the portions of food were inadequate. However, his testimony is vague and lacks detail concerning the actual quantity of food he received. Constitutional standards require only that prison authorities provide an inmate with "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999) (quoting Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986)). Plaintiff has failed to set forth facts to establish a deprivation of or deviation from this quality of food. The Constitution does not require that convicted inmates be provided with particular foods or every culinary amenity which one may find desirable. Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983); Wolfish v. Levi,

573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441

U.S. 520 (1979) (citing Newman v. Alabama, 559 F. 2d 283, 291 (5th Cir. 1977)).

      The Constitution also does not require that plaintiff receive particular amounts of

food.  Green, 801 F.2d at 770.  "'Whether the deprivation of food falls below this

threshold depends on the amount and duration of the deprivation.'  Even on a regular,

permanent basis, two meals a day may be adequate."  Berry, 192 F.3d at 507 (quoting

Green, 801 F.2d at 770-71).  Further, "inmates cannot expect the amenities, conveniences

and services of a good hotel." Harris v. Fleming, 839 F. 2d 1232, 1235 (7th Cir. 1988).

      Plaintiff was never denied food.  Wiley's complaints about the food at OPP are

legally frivolous and must be dismissed.

B.    Overcrowded Cells

      Wiley testified that the cells in OPP were overcrowded, but provided no details.

He did not describe any particular harm resulting from the alleged overcrowding.

      Considered as a whole, the conditions of plaintiff's confinement, while plainly not

comfortable or pleasant, are within constitutionally acceptable norms and do not rise to

a level of unconstitutional prison overcrowding. Wilson v. Lynaugh, 878 F. 2d 846, 849

(5th Cir. 1989) (Constitution does not mandate prisons with comfortable surroundings

and commodious conditions); Holloway, 685 F.2d at 156 (serving time in prison "is not

a guarantee that one will be safe from life's occasional inconveniences").

In short, the allegedly crowded conditions did not pose a substantial risk of serious harm, nor is there any allegation that prison officials were aware of any such risk and failed to abate it.  This claim is legally frivolous and must be dismissed.

C.      Hot Showers

Plaintiff's claim concerning the lack of hot showers fails to state a claim of constitutional violation.  Wiley submitted five separate grievances over a period of seven days in March 2006, requesting hot water for showers and implying that hot water showers were always unavailable.   However, the record indicates that hot water could sometimes be available to inmates.  The prison's response to Wiley's grievances states: "The showers have been staggered in an effort to provide some hot water to everyone." Record Doc. No. 1, attachments to Complaint.  Plaintiff submitted no further grievances concerning lack of hot water during the remainder of his five to six months of incarceration in HOD.

A short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."   Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765,

771 (5th Cir. 1986)).   None of  Wiley's allegations about the conditions at the jail establish constitutional violations.  Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway, 685 F.2d at 156.  Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

Although the conditions he described are obviously unpleasant, plaintiff has failed to allege either deprivations so extreme that they violate the Eighth Amendment or sufficiently serious harm resulting from these problems to meet the requirements of Farmer, and this claim does not rise to the level of a constitutional violation.

## VI.   MEDICAL CARE

Wiley testified that his medical care claim concerns the failure of OPP doctors to prescribe any medication for his sleeping disorder.  Wiley was a pretrial detainee during the time period about which he complains.  Before the Fifth Circuit's decision in Hare, 74 F.3d at 633, it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell, 441 U.S. at 539; Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the

Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

> In Hare, however, the Fifth Circuit held:
>
> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.   The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.   If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle, 429 U.S. at 104, as described in detail above, will apply.   Hare, 74 F.3d at 645.

25

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Estelle, 429 U.S. at 105-06; Hare, 74 F.3d at 650. The Farmer definition of "deliberate indifference" defined above applies to Eighth Amendment medical claims.  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

The same two-pronged analysis applied to Wiley's claim of failure to protect from harm also applies to his claim of inadequate medical care.  Thus, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and the inmate must show that the prison official was deliberately indifferent to inmate health or safety.  Farmer, 511 U.S. at 834; accord Wilson, 501 U.S. at 297; Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).  Again, "'[s]ubjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in Hare are at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm

26

and disregarded that risk by failing to take reasonable measures to abate it.  In this case,
Wiley fails completely to allege facts sufficient to establish deliberate indifference.

Initially, it cannot be concluded that the medical condition Wiley described,
insomnia, presented a serious medical need that posed a substantial risk of harm during
his incarceration at the jail.  See Smith v. Crose, No. 06-3168 (FSH), 2006 WL 2591075,
at *5 (D.N.J. Sept. 28, 2006) (Hochberg, J.) ("[W]hile Petitioner might have been
substantially inconvenienced by Petitioner's insomnia, Petitioner's reduced ability to fall
asleep does not amount to a serious medical need.") (citing Universal Calvary Church v.
City of N.Y., 2000 U.S. Dist. LEXIS 15153 (S.D.N.Y. Oct. 13, 2000) (insomnia does not
qualify as a serious injury)); compare Meloy v. Schuetzle, 230 F.3d 1363, 2000 WL
1160446, at *1 (8th Cir. 2000) (Plaintiff had a serious medical need when he had been
diagnosed with "potentially life-threatening" obstructive sleep apnea and had been
prescribed a continuous air pressure machine to use every night for the rest of his life.).
Wiley's testimony about his sleeping disorder did not identify any serious risk of harm
or any actual harm resulting from the alleged denial of treatment, and this condition does
not rise to the level of a serious medical need for purposes of constitutional analysis.

Even assuming that plaintiff's medical problem was somehow a serious condition
for constitutional purposes, he has alleged facts, confirmed by the medical records, that
negate any inference of deliberate indifference by jail officials.  Plaintiff's complaint, as

amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical attention while incarcerated at the jail.

Wiley was seen at least once a month by a doctor, except for a brief hiatus between June 15 and August 24, 2006.  Even during this time, however, he continued to receive a prescribed anti-psychotic medication, Haldol, which he had been receiving throughout his stay at the OPP.  He also received Benadryl, an antihistamine that can cause drowsiness,[5] throughout March, May and part of August 2006.  The only medical record of plaintiff complaining of sleeping problems was on September 1, 2006, when he asked for and was given Benadryl.  On October 12, 2006, plaintiff complained about the Haldol.  In response, the doctor discontinued Haldol and gave Wiley a new anti-psychotic medication, Stelazine, that has tranquilizing effects.[6]

Prison officials responded to plaintiff's complaints about his medical problems. Plaintiff's testimony and his verified medical records establish that he was examined by doctors, who considered and reviewed his conditions, and provided him with medication.

Contentions like Wiley's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section

---

[5]Benadryl (generic name: diphenhydramine) "may make you drowsy."  http://www.pdrhealth.com/drug_info/otcdrugprofiles/drugs/fgotc342.shtml.

[6]Stelazine (generic name: trifluoperazine) is "[o]ne of a group of tranquilizing drugs with antipsychotic actions."  http://www.medterms.com/script/main/art.asp?articlekey=11999.

1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Therefore, plaintiff's complaints in this case about his medical care for a sleep disorder advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

VII.   IMPROPER DEFENDANTS

Wiley named Mayor Nagin and Governor Blanco as defendants in this case. However, the Mayor of the City of New Orleans and the Governor of the State of Louisiana have no supervisory or policy-making responsibility for, or authority over, the operation of or conditions in OPP. Under Louisiana law, administration of a parish jail, including the obligation to care for, feed and clothe the prisoners, is the exclusive

29

province of the Sheriff, not of the city or parish where the jail is located.  La. Rev. Stat. §§ 15:704 (West 1992), 33:1435(A) (West 1988); Watson v. Graves, 909 F.2d 1549, 1551 (5th Cir. 1990); Thompkins v. Belt, 828 F.2d 298, 304 n.8 (5th Cir. 1987); Langley v. City of Monroe, 582 So. 2d 367, 368 (La. App. 2d Cir. 1991).  Wiley makes no claim that Mayor Nagin or Governor Blanco were personally involved in any of the alleged acts or omissions upon which his claims are based. He makes no allegations that the Mayor or the Governor implemented, established or carried out any official policy or custom related to the conduct of Orleans Parish Sheriff's officers about which plaintiff complains in this case, sufficient to state a Section 1983 claim against the Mayor or the Governor in their official capacities as the persons responsible for establishing final government policy of the City of New Orleans and the State of Louisiana, respectively.  Pembauer v. City of Cincinnati, 475 U.S. 469, 483 (1986); Monell v. Department of Social Servs., 436 U.S. 658 (1978). Thus, plaintiff's claims against the Mayor and the Governor must be dismissed as legally frivolous and/or pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

30

Alternatively, it is **RECOMMENDED** that plaintiff's claim of failure to protect from harm be **DISMISSED WITHOUT PREJUDICE** for his failure to exhaust his administrative remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___3rd___ day of May, 2007.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE